1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Megan A. Richmond (SBN 170753)
MEGAN A. RICHMOND, APC
655 W. Broadway, Suite 1700
San Diego, CA 92101
T: (619) 577-4253 | F: (619) 577-4250
megan@therichmondfirm.com

C. Brooks Cutter (SBN 121407)
Celine E. Cutter (SBN 312622)
CUTTER LAW P.C.
401 Watt Ave., Suite 100
Sacramento, CA 95864
T: (916) 290-9400| F: (916) 588-9330
bcutter@cutterlaw.com
ccutter@cutterlaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| BRIANA RIBOTA; NICOALE SYLVESTRE; LASHA DALTON; and YOLANDA SALAZAR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO, a legal subdivision of the State of California, and DOES 1-10, inclusive,<br><br>Defendants | Case No.: 5:20-CV-00505 JGB(KKx)<br><br>COLLECTIVE ACTION<br>[29 U.S.C. § 2216(b)<br><br>**JOINT MOTION FOR FINAL APPROVAL OF FLSA SETTLEMENT AGREEMENT** |

**JOINT MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiffs and Defendant County of San Bernardino ("Defendant" or "County") (collectively the "Parties") respectfully move this Court to approve their negotiated Settlement Agreement and Release ("Settlement Agreement") and dismiss the case with prejudice. As discussed more fully below, the Parties' Settlement Agreement resolves a bona fide dispute between the Parties in a lawsuit

that has spanned more than four years, provides for fair and reasonable compensation to each Plaintiff based on the allegations set forth in the complaints and information discovered during the litigation, and is fair and reasonable in terms of the attorneys' fees and costs sought by Plaintiffs' counsel in connection with pursuing this litigation. The Settlement Agreement, which is signed by all Plaintiffs and Defendant, is submitted to this Court as Exhibit 1 to the Declaration of Celine Cutter.

## STATEMENT OF RELEVANT FACTS

### BACKGROUND AND PROCEDURAL POSTURE

On March 11, 2020, Named Plaintiffs commenced the Lawsuit, on behalf of themselves and other employees similarly situated, and asserted a single claim for relief against Defendant under the Fair Labor Standards Act (FLSA).

On October 15, 2021, Plaintiffs filed a Motion for Conditional Certification seeking to certify a collective consisting of all persons employed by Defendant's Transitional Assistance Department as Employment Services Specialists and Eligibility Workers. Defendant filed its Opposition to Plaintiffs' Motion for Conditional Certification on October 25, 2021. On November 18, 2021, the Court issued an order granting conditional certification as to a collective of Employment Services Specialists and denying certification as to Eligibility Workers.

Thereafter, a total of 49 Employment Services Specialists opted-in to the Lawsuit as plaintiffs.

On December 11, 2022, Defendant filed a Motion to Decertify FLSA Collective Action and a Motion to Dismiss certain plaintiffs. Plaintiffs opposed the motions. On January 31, 2023, the Court issued an order denying Defendant's Motion to Decertify and granting in part Defendant's Motion to Dismiss. The Court dismissed 22 plaintiffs who had previously opted-in to the Lawsuit: 18 for failure to

participate in discovery, and 4 whose claims were outside the tolled statute of limitations. 4 Named Plaintiffs and 23 Opt-In Plaintiffs were left in the Lawsuit.

## THE PARTIES' SETTLEMENT EFFORTS

The Parties participated in a full day mediation with Hon. Jay C. Gandhi (Ret.) of JAMS on January 19, 2024, and thereafter counsel for the Parties continued to have settlement negotiations, eventually leading to this Agreement. Thereafter, all 4 Named Plaintiffs and all 23 Opt-In Plaintiffs consented to and approved of the terms of this Settlement. At this time all Plaintiffs and Defendant have signed the Settlement Agreement. (Cutter Decl., ¶ 3).

## RELEVANT TERMS OF THE SETTLEMENT AGREEMENT

The Parties memorialized the agreed upon terms in a long-form Settlement Agreement. As a result of the efforts summarized above, the Parties agreed to settle this matter for a total settlement amount of $900,000.00. This total settlement amount includes all amounts to be paid by Defendant to Plaintiffs for unpaid overtime, liquidated damages, interest, attorneys' fees, and costs to resolve these Actions. (Cutter Decl., ¶ 4.) Key details of the settlement terms are as follows:

1.    The County agrees to pay the Named Plaintiffs and Opt-In Plaintiffs in these Actions a total damages payment of $200,000.00. The total payment represents unpaid overtime, and liquidated damages. Defendant will prepare checks for each individual Plaintiff, which will then be provided to Plaintiffs' counsel, Cutter Law P.C., who will then distribute the checks to each Plaintiff. The amount paid to each Plaintiff was calculated by Plaintiffs' Counsel utilizing a damages analysis.

2.    The County shall further pay to each of the four Named Plaintiffs a "Service Payment" of $2,000.00 within twenty business (20) days after the Effective Date, defined as the date when the Court approves the

settlement.  The Parties agree that Named Plaintiffs are entitled to this Service Payment, and the amount thereof, in recognition of the Named Plaintiffs' efforts to pursue the claims raised in this Lawsuit on behalf of the Plaintiffs, including, but not limited to, providing factual information and otherwise assisting with the prosecution of the litigation, as well as the risks taken on behalf of the Plaintiffs.

3.     Plaintiffs agree to release their claims against Defendant and to dismiss the lawsuit with prejudice.

4.     The County further agrees to pay Plaintiffs' counsel $692,000.00 for Plaintiffs' reasonable attorneys' fees and costs.

(See Exhibit 1 to Cutter Decl.)

Prior to executing the above-referenced release, each individual Plaintiff had a full and fair opportunity to consult with Plaintiffs' counsel.  (Cutter Decl., ¶5). Every individual Plaintiff voluntarily agreed to accept the terms of the Settlement Agreement and execute the "Settlement Agreement and General Release" documents to that end.  (Cutter Decl., ¶5)

**LEGAL STANDARD FOR SETTLEMENT OF FLSA CLAIMS**

Settlement of collective action claims under the FLSA requires court approval.  *Selk v. Pioneers Memorial Healthcare District*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016).  The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am*., No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Rodriguez v. Nationwide Mutual Insurance Company*, No. 8:16-cv-02217-JLS-DFM, 2017 WL 7803796, at *1 (C.D. Cal. Nov. 16, 2017).  However, in this circuit, district courts have normally applied a widely-used standard adopted by the Eleventh Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute.  *Id*.; see also *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk*, 159

F.Supp.3d at 1172. "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Id*. (Internal quotation marks and citation omitted). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute. *Id*.

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA collective actions. *Khanna v. Inter-Con Sec. Sys., Inc*., No. CIV S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as:

> "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." (*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), order corrected, No. 2:09-CV-2214 KJM EFB, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015).)

With this approach, a "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id*. Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved to promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co*., No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

1

2

## ARGUMENT FOR APPROVAL OF THE SETTLEMENT AS A FAIR AND REASONABLE COMPROMISE OF DISPUTED CLAIMS

3

4

5

In order to approve the settlement in the instant case, the Court must find that (1) the case involves a bona fide dispute, (2) the proposed settlement agreement is fair and reasonable, and (3) the award of attorney's fees and costs are reasonable.

6

**BONA FIDE DISPUTE OF CLAIMS**

7

8

9

10

11

12

13

14

15

16

17

18

19

The Court should approve the proposed Settlement Agreement because it resolves several bona fide disputes between the Parties regarding legitimate questions over whether Defendant has any FLSA liability and the extent of Defendant's FLSA liability. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] . . . the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014); *Lynn's Food Stores*, 679 F.2d at 1353 n.8 (requiring "settlement of a bona fide dispute between the Parties with respect to coverage or amount due under the [FLSA]"). The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the Parties. *Id.*

20

21

22

23

24

25

26

27

Here, Plaintiffs contend that Defendant did not pay them for all their overtime hours owed under the FLSA. (Cutter Decl., ¶ 6.) Plaintiffs contend that Defendant knew or should have known that Plaintiffs were not paid for all of the overtime hours worked, including meal breaks, because they had more work than could be completed in forty (40) hours per week and because Defendant's overtime policy and procedures exclude compensation for many of the routine, non-emergency tasks that Plaintiffs were required to perform in order to avoid discipline or termination of employment. *Id.*

28

Defendant denies those claims and contends that Plaintiffs were not required

to work more than forty (40) hours per work period without overtime

compensation.  In addition, Defendant contends that Plaintiffs were expected to

comply with Defendant's overtime policy where overtime must be preapproved

except for emergency assignments and overtime must be accurately reported by

employees on time sheets.  Defendant denies that it had either actual or constructive

knowledge that Plaintiffs were working overtime that they were not reporting on

their timesheets.  Defendant also contends that there was no "willful" violation of

the FLSA.  Further, the Parties dispute whether Defendant is entitled to offset

premium overtime payments made to Plaintiffs against any FLSA liability pursuant

to 29 U.S.C. section 207(e) and (h).  (Cutter Decl., ¶ 7.)

The Parties also dispute whether the Plaintiffs are entitled to liquidated

damages.  (Cutter Decl., ¶ 8.)  29 U.S.C. section 216(b) provides that "an employer

who violates the Act shall be liable for unpaid overtime compensation plus an

additional equal amount as liquidated damages." *Local 246 Util. Workers Union of*

*Am. v. S. California Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996).  However,

liquidated damages may be denied if the employer can establish "subjective and

objective good faith in its violation of the FLSA." *Id*.  Here, Plaintiffs contend that

Defendant did not act in good faith by suffering or permitting Plaintiffs to work

more than forty (40) hours per week without paying them all of the overtime

compensation owed under the FLSA.  (Cutter Decl., ¶ 9.)  Defendant contends it

had reasonable grounds for believing its conduct complied with the FLSA because

Defendant enacted, issued, and stressed mandatory overtime reporting policies to

ensure its employees were paid.  Plaintiffs also acknowledged that they received

and understood the overtime policies.  Defendant utilized a timekeeping system

where employees were in control of their own time records and employees certified

that their reports of hours worked were true and accurate.  Therefore, Defendant's

liability for liquidated damages is disputed. *Id*.  If liquidated damages were denied,

Plaintiffs' range of recovery would be reduced by 50%.  See 29 U.S.C. section

216(b) – awarding liquidated damages in an equal amount to back pay recovered.

Based on the foregoing, the Parties submit that the Settlement Agreement resolved several bona fide disputes between the Parties that all necessarily affected the existence and extent of Defendant's liability.

## THE PROPOSED SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION OF PLAINTIFFS' CLAIMS

To determine whether a FLSA settlement is fair and reasonable, courts evaluate the "totality of the circumstances" within the context of the purposes of the FLSA. *Selk*, 159 F.Supp.3d at 1173; *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017); *Anspach v. 68-444 Perez, Inc.,* EDCV 19-2184 JGB (SPx), 2022 WL 2162820, at *4 (C.D. Cal. Apr. 21, 2022). Courts in the Ninth Circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. See *Selk*, 159 F.Supp.3d at 1173; *Slezak*, 2017 WL 2688224, at *3.

### Plaintiffs' Range of Possible Recovery

Courts in this circuit evaluate a plaintiff's range of potential recovery "to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims." *Selk,* 159 F.Supp.3d at 1173; *Anspach*, 2022 WL 2162820, at *4. Under the FLSA, the maximum amount a plaintiff can recover is twice the amount of underpaid wages for the three-year period prior to filing or opting into the lawsuit (*i.e.,* an award of liquidated damages coupled with a finding the violation was willful).

Under the terms of the Settlement Agreement, Defendant will pay Plaintiffs a total payment amount of $200,000.00, exclusive of plaintiff service payments, attorneys' fees and costs, which amount approximates a likely recovery at trial. (Cutter Decl., ¶ 10).  To determine Plaintiffs' damages, Plaintiffs' counsel retained a forensic accountant to perform a damages analysis based on the number of claimed unpaid FLSA overtime hours each Plaintiff worked and his or her liquidated damages amount and then an allocation of the total payment amount was apportioned out to each plaintiff.  *Id*.  For each Plaintiff, forty percent of the allocation represents back pay for unpaid wages and sixty percent represents liquidated damages.  For the total payment amount, Defendant will issue payment that represents unpaid overtime to each Plaintiff.  (Cutter Decl., ¶11.)  Damages were assessed on a back pay calculation for the relevant statutory period.  (Cutter Decl., ¶11). The Parties agree that the allocations of the total payment amount are consistent with and within the range of a reasonable result that each Plaintiff might expect to obtain if they prevailed after a trial.  (Cutter Decl., ¶12).

Individual recovery is not uniform, but Plaintiffs adequately explain this difference.  *Anspach*, 2022 WL 2162820, at *4.  The allocation of the total payment amount to Plaintiffs ranges from $313 to $18,000.   (Cutter Decl., ¶13). While the individual recovery amounts are not uniform, the differences consider the following factors for each Plaintiff: the length of the relevant statutory period, the length of employment, the rate of pay, and the alleged number of unpaid FLSA overtime hours.  *Id*.  Documentation and interrogatory responses prove claims from the individual Plaintiffs varied significantly and affected the valuation of the individual claims.  *Id.*

The Parties agree that allocations to each Plaintiff are consistent with the damages calculations and within the range of a reasonable result that each Plaintiff might expect to obtain if they prevailed after a trial.  (Cutter Decl., ¶ 14.)

Taken together, these terms of the Settlement Agreement provide Plaintiffs with prompt, significant, and certain recovery, especially given the risks presented by continued litigation.  Given the inherent risks, this settlement provides Plaintiffs fair and equitable recovery that is at least equivalent to, if not better than, the likely outcome at trial. (Cutter Decl., ¶ 15.)

## The Stage of the Proceedings and the Amount of Discovery Conducted

Courts assess the stage of the proceedings and the amount of discovery completed to ensure that parties have an adequate appreciation of the merits of the case before reaching a settlement. *Selk*, 159 F. Supp. 3d at 1177; *Anspach,* 2022 WL 2162820, at *5; *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the claims before reaching a resolution.").  As long as the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the Parties litigated the Action extensively and have sufficient information to make an informed decision regarding settlement.  The Parties engaged in extensive formal discovery, including written discovery and depositions.  (Cutter Decl., ¶16.)  Plaintiffs requested and received the necessary evidence (i.e., time and payroll records) to form an adequate appreciation of the merits of the cases before reaching the proposed settlement. *Id.* Defendant produced thousands of pages of documents related to Plaintiffs' hours worked and compensation paid, as well as policies and memoranda of understanding governing Plaintiffs' compensation.  (Cutter Decl., ¶ 17.)  Plaintiffs in the Action retained an expert to calculate damages for the Named Plaintiffs and Individual Plaintiffs. (Cutter Decl., ¶17.)  Defendant retained an expert as well.  The Parties took part in mediation, fully briefed several motions including a motion for summary judgment

and a motion to decertify the collective action, and prepared pretrial documents including memoranda of contentions of fact and law and a final pretrial conference order in the Action.  The Parties engaged in written discovery for all of the Plaintiffs.  *Id.*  Fourteen of the Plaintiffs were also deposed during discovery for the Action.  *Id.*  The Parties agree that they have conducted sufficient discovery for the Plaintiffs to understand their relative litigation position.  *Id.*

Based on the foregoing, this factor weighs in favor of settlement.

### **The Seriousness of the Litigation Risks Faced by the Parties**

Settlement is favored where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015); *Anspach,* 2022 WL 2162820, at *5.  As discussed in greater detail above, the Settlement Agreement provides Plaintiffs with significant relief and continued litigation would harm Plaintiffs by jeopardizing the relief already secured for them.

There are a number of variables and risks that could impact the calculation of damages in this case. First, there is a bona fide dispute about whether Plaintiffs were suffered or permitted to work more than forty (40) hours per work period without overtime compensation.  (Cutter Decl., ¶ 18.)  Second, there is a bona fide dispute about whether Defendant had either actual or constructive knowledge that Plaintiffs were working overtime that they were not reporting on their timesheets.  *Id.*  Third, expected testimony from supervisors and regional managers would contradict the Plaintiffs' claims.  Fourth, if there were to be a finding of FLSA liability at trial, there is significant risk that a jury could award a lesser recovery for the number of unpaid FLSA overtime hours to Plaintiffs.  Fifth, Plaintiffs may be limited in any recovery since the damages calculations do not apply offsets and credits Defendant otherwise would be legally entitled to.  *Id.*  Sixth, Plaintiffs may also be limited in their recovery if Defendant proves it acted in good faith and that its underpayment of wages was not willful.  If Plaintiffs do not prevail on these

issues, their recovery would be significantly diminished if not eliminated.  All of
these concerns pose a risk to Plaintiffs that could decrease their overall recovery.

## The Scope of Any Release Provision in the Settlement Agreement

Here, in return for significant compensation, the Plaintiffs are releasing their
causes of action, penalties, compensatory damages, liquidated damages, attorneys'
fees, demands, rights, liabilities, liens, relief, and other causes of action, whether
asserted on unasserted, suspected or unsuspected, whatsoever against Defendant or
any of the Released SBCo Parties, through the Relevant Time Period, defined as
March 11, 2017 through the Effective Date of the Agreement.   None of the
Plaintiffs are releasing any future claims against the County.  Notably, the parties
specifically excepted from the release the claims brought by Named Plaintiffs
Briana Ribota and Nicoale Sylvestre in the related action of *Marquez, et al. v.
County of San Bernardino*, Central District of California case number 5:20-cv-
00693-JGB-KK, which settlement is also being presented to this Court for
approval.  Plaintiffs Ribota and Sylvestre will recover in that settlement as well.
The releases were negotiated between the parties; they are prominent and
conspicuous in the Settlement Agreement; and each Plaintiff (Named Plaintiffs and
Opt-In Plaintiffs) has personally signed the Settlement Agreement, confirming they
consent to the releases therein.  In other cases, courts have upheld broad releases in
FLSA collective actions.  *See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*,
No. 13-CV-5008 (RJS), 2016 WL 922223, at \*2 (S.D.N.Y. Feb. 3, 2016)
(upholding broad release of non-FLSA claims as "the fair result of a balanced
negotiations, in which Plaintiffs were represented by able counsel" and where
plaintiffs did not "release any future claims"); *DeGraff v. SMA Behav. Health
Servs., Inc.*, 945 F. Supp. 2d 1324, 1329 (M.D. Fla. 2013) (approving broad general
release of non-FLSA claims).

## The Experience and Views of Counsel

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014); *Anspach,* 2022 WL 2162820, at *5. Here, Plaintiffs' counsel asserts that the terms of the Settlement Agreement are fair and reasonable, and that the settlement amount is within the range that Plaintiffs could expect to recover if this matter were to proceed to trial. (Cutter Decl., ¶ 19.) Plaintiffs' counsel has years of experience litigating FLSA claims and has settled multiple FLSA claims and obtained court approval of those settlements. Thus, this evaluation of the case is reliable.

In addition, counsel for Defendant has years of experience advising public agencies on FLSA matters and defending public agencies in FLSA lawsuits. Based on this experience, it is the position of defense counsel that this settlement is fair and reasonable and will have a materially beneficial effect on Plaintiffs' compensation. (Cutter Decl., ¶20.)

## **The Possibility of Fraud or Collusion**

Here, at all times, settlement negotiations have been at arms-length and there has been no fraud or collusion. (Cutter Decl., ¶ 21.) Approval by the Plaintiffs further supports a finding that counsel did not collude, or otherwise allow self-interest to infect the settlement negotiations. See *Quiroz v. City of Ceres* (E.D. Cal., Mar. 1, 2019, No. 117CV00444DADBAM) 2019 WL 1005071, at *5; *Valentine v. Sacramento Metropolitan Fire District* (E.D. Cal., Feb. 15, 2019, No. 217CV00827KJMEFB) 2019 WL 651654, at *6; *Englert v. City of Merced* (E.D. Cal., May 7, 2020, No. 118CV01239NONESAB) 2020 WL 2215749, at *10, report and recommendation adopted (E.D. Cal., May 26, 2020, No. 118CV01239NONESAB) 2020 WL 2732031.

The Parties have participated in lengthy settlement discussions. (Cutter Decl., ¶ .) The Parties reached an agreement after mediation with an experienced

mediator who is a retired District Court Judge.  (Cutter Decl., ¶ .)   In addition, each Plaintiff has been provided with a copy of the Settlement Agreement and has had an opportunity to review it and discuss it with their attorneys.  (Cutter Decl., ¶ .)  After doing so, each Plaintiff voluntarily agreed to the terms of the Settlement Agreement.  (Cutter Decl., ¶ .)  The Plaintiffs' agreement to the terms of the settlement favors approval. See *Quiroz v. City of Ceres* (E.D. Cal., Mar. 1, 2019, No. 117CV00444DADBAM) 2019 WL 1005071, at *5; *Valentine v. Sacramento Metropolitan Fire District* (E.D. Cal., Feb. 15, 2019, No. 217CV00827KJMEFB) 2019 WL 651654, at *6; *Englert v. City of Merced* (E.D. Cal., May 7, 2020, No. 118CV01239NONESAB) 2020 WL 2215749, at *10, report and recommendation adopted (E.D. Cal., May 26, 2020, No. 118CV01239NONESAB) 2020 WL 2732031.  Accordingly, this factor weighs in favor of settlement.

### ATTORNEYS' FEES AND COSTS

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F.Supp.3d at 1180; *see also* 29 U.S.C. § 216(b) (providing that, in an FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").  Here, the Parties' Settlement Agreement provides that Defendant agrees to pay Plaintiff's counsel $692,000.00 in attorneys' fees and costs.  Because the Parties agreed to the above fees in an attempt to resolve the dispute expediently and with the Plaintiffs' best interests in mind, Plaintiffs' attorney's fees are reasonable.  (Cutter Decl., ¶ 23).

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method for awarding attorneys' fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Here, the attorneys' fees and costs provided by the Settlement Agreement are

well below those that would be provided to a prevailing party in a wage and hour action if the fee award were calculated based upon the hours expended at the prevailing rates.  Prevailing parties are entitled to receive an award of fees for all hours reasonably expended at rates in line with the "prevailing market rate." *Carson v. Billings Police Dept.,* 470 F.3d 889, 891 (9th Cir. 2006).  The "prevailing market rate" is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  The relevant community is the forum in which the district court sits.  *Id*. at 979; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013); *In re City of Redondo Beach FLSA Litigation,* No. 217CV09097ODWSKX) 2021 WL 5493978, at *4 (C.D. Cal., Nov. 23, 2021).  In this case, the community is the Central District of California.

In *Contreras v. Armstrong Flooring, Inc*., 2021 WL 4352299 (C.D. Cal. July 6, 2021), a court in this district awarded an hourly rate of $625 to attorneys with 20 years of experience.  *Contreras*, 2021 WL 4352299 at *11.  The Court relied on the 2020 Real Rate Report, which provides that, in Los Angeles, partners litigating employment and labor matters have hourly rates ranging from $470 to $753.  (*Id., citing, 2020 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* at 74.)  Accordingly, the Court accepted Class Counsels' rate of $625 as within the range charged in the relevant community.  (*Id*.)

In *In re City of Redondo Beach FLSA Litigation,* a court in this district awarded an hourly rate of $525 to an attorney with 17 years of experience, $450 for an attorney with nine (9) years of experience, and $350 for an attorney with four (4) years of experience.  *In re City of Redondo Beach FLSA Litigation,* 2021 WL 5493978 at *4-5.

Plaintiffs' counsel Brooks Cutter's hourly rate is $1,000.  He has 38 years of practice litigating wage and hour claims and employment law matters.  (Cutter Dec., ¶ 24).  As of May 10, 2024, he has spent approximately 59.5 hours on this Action.

*Id.*

Plaintiffs' counsel John R. Parker, Jr.'s hourly rate is $750.  He has 20 years of practice litigating wage and hour claims and employment law matters.  (Cutter Dec., ¶25.)  As of May 10, 2024, he has spent approximately 423.9 hours on this Actions.  *Id.*

Plaintiffs' counsel Celine Cutter's hourly rate is $400.  She has 6 years of practice litigating wage and hour claims and employment law matters.  (Cutter Dec., ¶ 26.)  As of May 10, 2024, she has spent approximately 231.8 hours on this Action.  *Id.*

Plaintiffs' counsel Megan Richmond's hourly rate is $800.  She has 21 years of practice litigating wage and hour claims and employment law matters.  (Cutter Dec., ¶ 27 .)  As of May 10, 2023, she has spent approximately 271.3 hours on this Action.  *Id.*

Plaintiffs' counsel Moira Kamgar's hourly rate is $600.  She has been an attorney for over 30 years. She has 4 years of practice litigating wage and hour claims and employment law matters.  (Cutter Dec., ¶ 28.)  As of May 10, 2023, she has spent approximately 834.25 hours on this Action.  *Id.*

The Court previously approved these rates for Plaintiffs' counsel in *Phillips et al. v. County of Riverside*, Case No. 5:19-cv-01231-JGB.

Plaintiffs' counsel also advanced $52,165.11 in litigation costs.  (Cutter Decl., ¶ 29.)

Applying the hourly rates previously approved by this Court as reasonable for lodestar purposes to the hours reasonably expended by Plaintiffs' counsel on this matter to date would result in fees of $1,187,735 without applying any multiplier. Plaintiffs' counsel seeks approval of a substantially reduced amount for all time and costs expended on this matter ($692,000.00).

Therefore, the Court should approve the attorneys' fees and costs agreed to as part of the settlement.

1

2    **<u>CONCLUSION</u>**

3        Based on the foregoing, the Parties respectfully request this Court approve the

4    proposed Settlement Agreement.

5

6

7    Dated:        May 25, 2024                    CUTTER LAW P.C.

8                                          By:  /s/ Celine E. Cutter
                                               _____
9                                                Celine E. Cutter

10                                               Megan A. Richmond (SBN 170753)
                                                MEGAN A. RICHMOND, APC
11                                               655 W. Broadway, Suite 1700
                                                San Diego, CA 92101
12                                               T: (619) 577-4253 | F: (619) 577-4250
                                                megan@therichmondfirm.com
13

14                                               C. Brooks Cutter (SBN 121407)
                                                Celine E. Cutter (SBN 312622)
15                                               CUTTER LAW P.C.
                                                401 Watt Ave., Suite 100
16                                               Sacramento, CA 95864
                                                T: (916) 290-9400| F: (916) 588-9330
17                                               bcutter@cutterlaw.com
                                                ccutter@cutterlaw.com
18
                                                **_Attorneys for Plaintiffs_**
19

20

21   Dated:        May 25, 2024                    MILLER BARONDESS, LLP

22                                          By:  /s/ Jeffery B. White
                                               _____
23

24
                                                Mira Hashmall
25                                               Jeffery B. White

26                                               2121 Avenue of the Stars
                                                26th Floor
27                                               Los Angeles, CA 90067
                                                Telephone: (310) 552-4400
28                                               Facsimile: (310) 552-8400

E:jwhite@millerbarondess.com
E:mhashmall@millerbarondess.com

***Attorneys for Defendant County of San Bernardino***

## SIGNATURE ATTESTATION

I hereby attest that I have obtained the authorization from the signatories to this e-filed document and have been authorized to indicate their consent by a conformed signature (/s/) within this e-filed document.

Respectfully submitted by,

Dated:   May 24, 2024

CUTTER LAW, P.C.

By: /s/ Celine E. Cutter
_____
Celine E. Cutter

C. Brooks Cutter (SBN 121407)
Celine E. Cutter (SBN 312622)
**CUTTER LAW, P.C.**
401 Watt Avenue
Sacramento, CA 95864
Telephone: (916) 290-9440
Facsimile: (916) 588-9330
Email: bcutter@cutterlaw.com;
Email: ccutter@cutterlaw.com

JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

**CERTIFICATE OF SERVICE**

I certify that on May 24, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in the action of *Ribota, et al. v. County of San Bernardino*, Case No.: CASE NO. 5:20-cv-00505 JGB (KKx).

By: /s/ Celine E. Cutter
_____
Celine E. Cutter

JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT